# MARRESE ET AL. v. AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS

No. 83–1452.  Argued December 4, 1984—Decided March 4, 1985

O'CONNOR, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, POWELL, and REHNQUIST, JJ., joined. BURGER, C. J., filed an opinion concurring in the judgment, *post*, p. 387. BLACKMUN and STEVENS, JJ., took no part in the consideration or decision of the case.

*Michael T. Sawyier* argued the cause for petitioners. With him on the briefs were *Stephen B. Cohen, George C. Pontikes,* and *John J. Casey, Jr.*

*Charles W. Murdock,* Deputy Attorney General of Illinois, argued the cause for the State of Illinois et al. as *amici curiae* urging reversal. With him on the brief were *Neil F. Hartigan,* Attorney General of Illinois, and *Robert E. Davy, Thomas J. DeMay,* and *James N. O'Hara,* Assistant Attorneys General, *Linley E. Pearson,* Attorney General of Indiana, and *Frank A. Baldwin,* Deputy Attorney General, *Bronson C. La Follette,* Attorney General of Wisconsin, and *Michael L. Zaleski,* Assistant Attorney General.

*D. Kendall Griffith* argued the cause for respondent. With him on the brief were *Thomas M. Crisham, Robert E. Nord,* and *Pamela S. Hollis.*

JUSTICE O'CONNOR delivered the opinion of the Court.

This case concerns the preclusive effect of a state court judgment in a subsequent lawsuit involving federal antitrust claims within the exclusive jurisdiction of the federal courts. The Court of Appeals for the Seventh Circuit, sitting en banc, held as a matter of federal law that the earlier state court judgments barred the federal antitrust suit. 726 F. 2d 1150 (1984). Under 28 U. S. C. § 1738, a federal court generally is required to consider first the law of the State in which the judgment was rendered to determine its preclusive effect. Because the lower courts did not consider state preclusion law in this case, we reverse and remand.

I

Petitioners are board-certified orthopaedic surgeons who applied for membership in respondent American Academy of Orthopaedic Surgeons (Academy). Respondent denied the membership applications without providing a hearing or a statement of reasons. In November 1976, petitioner Dr. Treister filed suit in the Circuit Court of Cook County, State of Illinois, alleging that the denial of membership in the Academy violated associational rights protected by Illinois common law. Petitioner Dr. Marrese separately filed a similar action in state court. Neither petitioner alleged a violation of state antitrust law in his state court action; nor did either petitioner contemporaneously file a federal antitrust suit. The Illinois Appellate Court ultimately held that Dr. Treister's complaint failed to state a cause of action, *Treister* v. *American Academy of Orthopaedic Surgeons,* 78 Ill. App. 3d 746, 396 N. E. 2d 1225 (1979), and the Illinois Supreme Court denied leave to appeal. 79 Ill. 2d 630 (1980). After the Appellate Court ruled against Dr. Treister, the Circuit Court dismissed Dr. Marrese's complaint.

In March 1980, petitioners filed a federal antitrust suit in the United States District Court for the Northern District of Illinois based on the same events underlying their unsuccessful state court actions. As amended, the complaint alleged that respondent Academy possesses monopoly power, that petitioners were denied membership in order to discourage competition, and that their exclusion constituted a boycott in violation of § 1 of the Sherman Act, 15 U. S. C. § 1. App. 8, 26–30, 33. Respondent filed a motion to dismiss arguing that claim preclusion barred the federal antitrust claim because the earlier state court actions concerned the same facts and were dismissed with prejudice.[1] In denying this motion, the District Court reasoned that state courts lack jurisdiction over federal antitrust claims, and therefore a state court judgment cannot have claim preclusive effect in a subsequent federal antitrust suit. 496 F. Supp. 236, 238–239 (1980), on reconsideration, 524 F. Supp. 389 (1981). Discovery began and respondent refused to allow petitioners access to certain files relating to membership applications. After respondent persisted in this refusal despite a discovery order, the District Court held respondent in criminal contempt. App. to Pet. for Cert. N–1.

The judgment of contempt was reversed by a divided panel of the Court of Appeals in an opinion holding that the District Judge had abused his discretion by authorizing discovery of the membership files and also suggesting that the federal action was barred by claim preclusion and that the antitrust claims were groundless. 692 F. 2d 1083 (1982). This opinion was vacated by an en banc vote, and the original panel issued a narrower opinion that did not discuss claim pre-

---

[1] In this opinion we use the term "claim preclusion" to refer to "res judicata" in a narrow sense, *i. e.*, the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit. In contrast, we use the term "issue preclusion" to refer to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. See *Migra* v. *Warren City School Dist. Bd. of Ed.*, 465 U. S. 75, 77, n. 1 (1984).

clusion. 706 F. 2d 1488 (1983). The Court of Appeals then vacated the second opinion and ordered rehearing en banc. In a divided vote, the Court of Appeals held that claim preclusion barred the federal antitrust suit and reversed the contempt order because the discovery order was invalid. 726 F. 2d 1150 (1984).

On the claim preclusion issue, no opinion commanded the votes of a majority of the Court of Appeals. A plurality opinion concluded that a state court judgment bars the subsequent filing of a federal antitrust claim if the plaintiff could have brought a state antitrust claim under a state statute "materially identical" to the Sherman Act. *Id.*, at 1153. The plurality examined the Illinois Antitrust Act, Ill. Rev. Stat., ch. 38, ¶ 60–3(2) (1981), and found that it is sufficiently similar to the Sherman Act to bar petitioners' federal antitrust claims in the instant case. *Id.*, at 1155–1156. An opinion concurring in part concluded that res judicata required petitioners to bring their "entire cause of action within a reasonable period of time." *Id.*, at 1166 (Flaum, J.). To avoid preclusion of their federal antitrust claim, petitioners should have either filed concurrent state and federal actions or brought their state claims in federal court pendent to their Sherman Act claim. *Ibid.*

Five judges also concluded that the discovery order was invalid and therefore the contempt judgment should be reversed. A plurality opinion first observed that the discovery order was invalid because the District Court should have dismissed the suit on claim preclusion grounds before the discovery order was entered. *Id.*, at 1158. Alternatively, the order constituted an abuse of discretion because it did not adequately prevent petitioners from misusing the discovery process. *Id.*, at 1158–1162. Three judges joined the entire discussion concerning the discovery order. A fourth judge did not believe that claim preclusion applied, but he agreed that the discovery order constituted an abuse of discretion. *Id.*, at 1162 (Eschbach, J., concurring in part and dissenting in part). Finally, the fifth judge observed that it was suffi-

cient to hold that the complaint should have been dismissed on claim preclusion grounds; he added, however, that if he thought it necessary he would join the portion of the plurality opinion holding the discovery order invalid. *Id.*, at 1162 (Bauer, J., concurring).

We granted certiorari limited to the question whether the Court of Appeals correctly held that claim preclusion requires dismissal of the federal antitrust action, 467 U. S. 1258 (1984), and we now reverse.

## II

Before addressing the merits of the decision below, we first examine whether the Court of Appeals had jurisdiction to review the District Court's denial of the motion to dismiss. Although the parties did not raise the jurisdictional issue before this Court, we address it to assure that the claim preclusion issue is properly before us. See, *e. g.*, *United States* v. *Storer Broadcasting Co.*, 351 U. S. 192, 197 (1956). In the present case, the District Court initially refused to certify its denial of the motion to dismiss for immediate appeal pursuant to 28 U. S. C. § 1292(b). The District Court subsequently held respondent in criminal contempt for refusing to comply with a discovery order. Respondent then appealed from the judgment of criminal contempt pursuant to 28 U. S. C. § 1291. See *Bray* v. *United States*, 423 U. S. 73 (1975) *(per curiam)*. While the appeal from the contempt judgment was pending, the District Court amended the earlier denial of the motion to dismiss in order to certify it for immediate appeal. App. to Pet. for Cert. I–1. The Court of Appeals authorized interlocutory appeal pursuant to § 1292(b), and ordered proceedings consolidated with the appeal from the contempt order. 726 F. 2d, at 1152; App. to Pet. for Cert. J–1.

Petitioners argued below that because the appeal from the contempt order was pending, the District Court lacked jurisdiction to amend its order denying the motion to dismiss to

allow interlocutory appeal. In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal. *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56, 58 (1982) *(per curiam)*. This proposition, however, does not imply that an appeal from a judgment of criminal contempt based on noncompliance with a discovery order transfers jurisdiction over the entire case to the court of appeals. Criminal contempt judgments are immediately appealable pursuant to § 1291 because they result from "'a separate and independent proceeding . . . to vindicate the authority of the court'" and are "'not a part of the original cause.'" *Bray*, *supra*, at 75, quoting *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 445, 451 (1911).

Thus, prior to certification of the claim preclusion issue pursuant to § 1292(b), the contempt judgment was the only matter before the Court of Appeals. See 706 F. 2d, at 1497–1498; 692 F. 2d, at 1096. The District Court's amendment of its initial denial of the motion to dismiss did not interfere with but instead facilitated review of the pending appeal from the contempt order. We agree with the Court of Appeals, 726 F. 2d, at 1152, that the pendency of the appeal from the contempt judgment did not prevent the District Court from certifying the denial of the motion to dismiss for immediate appeal under § 1292(b). Accordingly, the Court of Appeals properly exercised jurisdiction over the consolidated appeals, and we have jurisdiction to review that court's decision with respect to dismissal of the antitrust claim.

## III

The issue presented by this case is whether a state court judgment may have preclusive effect on a federal antitrust claim that could not have been raised in the state proceeding. Although federal antitrust claims are within the exclusive jurisdiction of the federal courts, see, *e. g.*, *General Investment*

*Co.* v. *Lake Shore & M. S. R. Co.*, 260 U. S. 261, 286–288 (1922), the Court of Appeals ruled that the dismissal of petitioners' complaints in state court barred them from bringing a claim based on the same facts under the Sherman Act. The Court of Appeals erred by suggesting that in these circumstances a federal court should determine the preclusive effect of a state court judgment without regard to the law of the State in which judgment was rendered.

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U. S. C. § 1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Kremer* v. *Chemical Construction Corp.*, 456 U. S. 461, 481–482 (1982); see also *Allen* v. *McCurry*, 449 U. S. 90, 96 (1980). Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts. See *Kremer, supra,* at 478, 481–483. Cf. *Riley* v. *New York Trust Co.*, 315 U. S. 343, 349 (1942) (discussing preclusive effect of state judgment in proceedings in another State).

The fact that petitioners' antitrust claim is within the exclusive jurisdiction of the federal courts does not necessarily make § 1738 inapplicable to this case. Our decisions indicate that a state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts. Without discussing § 1738,

this Court has held that the issue preclusive effect of a state court judgment barred a subsequent patent suit that could not have been brought in state court. *Becher* v. *Contoure Laboratories, Inc.*, 279 U. S. 388 (1929). Moreover, *Kremer* held that § 1738 applies to a claim of employment discrimination under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.*, although the Court expressly declined to decide whether Title VII claims can be brought only in federal courts. 456 U. S., at 479, n. 20. *Kremer* implies that absent an exception to § 1738, state law determines at least the issue preclusive effect of a prior state judgment in a subsequent action involving a claim within the exclusive jurisdiction of the federal courts.

More generally, *Kremer* indicates that § 1738 requires a federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment. Cf. *Haring* v. *Prosise*, 462 U. S. 306, 314, and n. 8 (1983); Smith, Full Faith and Credit and Section 1983: A Reappraisal, 63 N. C. L. Rev. 59, 110–111 (1984). The Court's analysis in *Kremer* began with the finding that state law would in fact bar relitigation of the discrimination issue decided in the earlier state proceedings. 456 U. S., at 466–467. That finding implied that the plaintiff could not relitigate the same issue in federal court unless some exception to § 1738 applied. *Ibid.* *Kremer* observed that "an exception to § 1738 will not be recognized unless a later statute contains an express or implied repeal." *Id.*, at 468; see also *Allen* v. *McCurry*, *supra*, at 99. Title VII does not expressly repeal § 1738, and the Court concluded that the statutory provisions and legislative history do not support a finding of implied repeal. 456 U. S., at 476. We conclude that the basic approach adopted in *Kremer* applies in a lawsuit involving a claim within the exclusive jurisdiction of the federal courts.

To be sure, a state court will not have occasion to address the specific question whether a state judgment has issue or claim preclusive effect in a later action that can be brought

only in federal court. Nevertheless, a federal court may rely in the first instance on state preclusion principles to determine the extent to which an earlier state judgment bars subsequent litigation. Cf. *FDIC* v. *Eckhardt*, 691 F. 2d 245, 247–248 (CA6 1982) (applying state law to determine preclusive effect on claim within concurrent jurisdiction of state and federal courts). *Kremer* illustrates that a federal court can apply state rules of issue preclusion to determine if a matter actually litigated in state court may be relitigated in a subsequent federal proceeding. See 456 U. S., at 467.

With respect to matters that were not decided in the state proceedings, we note that claim preclusion generally does not apply where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts . . . ." Restatement (Second) of Judgments § 26(1)(c) (1982). If state preclusion law includes this requirement of prior jurisdictional competency, which is generally true, a state judgment will *not* have claim preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts. Even in the event that a party asserting the affirmative defense of claim preclusion can show that state preclusion rules in some circumstances bar a claim outside the jurisdiction of the court that rendered the initial judgment, the federal court should first consider whether application of the state rules would bar the particular federal claim.[2]

---

[2] Our analysis does not necessarily suggest that the Court of Appeals for the Fourth Circuit erred in its holding in *Nash County Board of Education* v. *Biltmore Co.*, 640 F. 2d 484, cert. denied, 454 U. S. 878 (1981). The Court of Appeals there applied federal preclusion principles to conclude that a state judgment approving settlement of state antitrust claims barred a subsequent federal antitrust claim. Although our decision today indicates that the Court of Appeals should have looked in the first instance to state law to determine the preclusive effect of the state judgment, the same holding would result if application of state preclusion law suggests

Reference to state preclusion law may make it unnecessary to determine if the federal court, as an exception to § 1738, should refuse to give preclusive effect to a state court judgment. The issue whether there is an exception to § 1738 arises only if state law indicates that litigation of a particular claim or issue should be barred in the subsequent federal proceeding. To the extent that state preclusion law indicates that a judgment normally does not have claim preclusive effect as to matters that the court lacked jurisdiction to entertain, lower courts and commentators have correctly concluded that a state court judgment does not bar a subsequent federal antitrust claim. See 726 F. 2d, at 1174 (Cudahy, J., dissenting) (citing cases); 692 F. 2d, at 1099 (Stewart, J., dissenting); Restatement, *supra*, § 25(1), Comment *e; id.*, § 26(1)(c), Illustration 2; 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4470, pp. 687–688 (1981). Unless application of Illinois preclusion law suggests, contrary to the usual view, that petitioners' federal antitrust claim is somehow barred, there will be no need to decide in this case if there is an exception to § 1738.[3]

---

that the settlement bars the subsequent federal claim and if there is no exception to § 1738 in these circumstances. Cf. 640 F. 2d, at 487, n. 5 (noting that state law gives preclusive effect to consent judgment). We, of course, do not address those issues here.

[3] THE CHIEF JUSTICE notes that preclusion rules bar the splitting of a cause of action between a court of limited jurisdiction and one of general jurisdiction, and suggests that state requirements of jurisdictional competency may leave unclear whether a state court action precludes a subsequent federal antitrust claim. *Post*, at 388–390. The rule that the judgment of a court of limited jurisdiction concludes the entire claim assumes that the plaintiff might have commenced his action in a court *in the same system of courts* that was competent to give full relief. See Restatement (Second) of Judgments § 24, Comment *g* (1982). Moreover, the jurisdictional competency requirement generally is understood to imply that state court litigation based on a state statute analogous to a federal statute, *e. g.*, a state antitrust law, does not bar subsequent attempts to secure

The Court of Appeals did not apply the approach to § 1738 that we have outlined. Both the plurality opinion, see 726 F. 2d, at 1154, and an opinion concurring in part, see *id.*, at 1163–1164 (Flaum, J.), express the view that § 1738 allows a federal court to give a state court judgment greater preclusive effect than the state courts themselves would give to it. This proposition, however, was rejected by *Migra* v. *Warren City School Dist. Bd. of Ed.*, 465 U. S. 75 (1984), a case decided shortly after the Court of Appeals announced its decision in the instant case. In *Migra*, a discharged schoolteacher filed suit under 42 U. S. C. § 1983 in federal court after she prevailed in state court on a contract claim involving the same underlying events. The Federal District Court dismissed the § 1983 action as barred by claim preclusion. The opinion of this Court emphasized that under § 1738, state law determined the preclusive effect of the state judgment. *Id.*, at 81. Because it was unclear from the record whether the District Court's ruling was based on state preclusion law, we remanded for clarification on this point. *Id.*, at 87. Such a remand obviously would have been unnecessary were a federal court free to give greater preclusive effect to a state court judgment than would the judgment-rendering State. See *id.*, at 88 (WHITE, J., concurring). We are unwilling to create a special exception to § 1738 for federal antitrust claims that would give state court judgments greater preclusive effect than would the courts of the State rendering the judgment. Cf. *Haring* v. *Prosise*, 462 U. S., at 317–318 (refusing to create special preclusion rule for § 1983 claim subsequent to plaintiff's guilty plea). The plurality opinion for the Court of Appeals relied on *Federated*

relief in federal court if the state court lacked jurisdiction over the federal statutory claim. *Id.*, § 26(1)(c), Illustration 2. Although a particular State's preclusion principles conceivably could support a rule similar to that proposed by THE CHIEF JUSTICE, *post*, at 390–391, where state preclusion rules do not indicate that a claim is barred, we do not believe that federal courts should fashion a federal rule to preclude a claim that could not have been raised in the state proceedings.

*Department Stores, Inc.* v. *Moitie*, 452 U. S. 394 (1981), to observe that the doctrine of claim preclusion protects defend-ants from repetitive lawsuits based on the same conduct, 726 F. 2d, at 1152, and that there is a practical need to require plaintiffs "to litigate their claims in an economical and parsimonious fashion." *Id.*, at 1153. We agree that these are valid and important concerns, and we note that under § 1738 state issue preclusion law may promote the goals of repose and conservation of judicial resources by preventing the relitigation of certain issues in a subsequent federal proceeding. See *Kremer*, 456 U. S., at 485 (state judgment barred subsequent Title VII action in federal court).

If we had a single system of courts and our only concerns were efficiency and finality, it might be desirable to fashion claim preclusion rules that would require a plaintiff to bring suit initially in the forum of most general jurisdiction, thereby resolving as many issues as possible in one proceeding. See Restatement (Second) of Judgments § 24, Comment *g* (1982); C. Wright, A. Miller, & E. Cooper, *supra*, § 4407, p. 51; *id.* § 4412, p. 93. The decision of the Court of Appeals approximates such a rule inasmuch as it encourages plaintiffs to file suit initially in federal district court and to attempt to bring any state law claims pendent to their federal antitrust claims. Whether this result would reduce the overall burden of litigation is debatable, see 726 F. 2d, at 1181–1182 (Cudahy, J., dissenting); C. Wright, A. Miller, & E. Cooper, *supra*, § 4407, p. 51–52, and we decline to base our interpretation of § 1738 on our opinion on this question.

More importantly, we have parallel systems of state and federal courts, and the concerns of comity reflected in § 1738 generally allow States to determine the preclusive scope of their own courts' judgments. See *Kremer, supra*, at 481–482; *Allen* v. *McCurry*, 449 U. S., at 96; cf. Currie, Res Judicata: The Neglected Defense, 45 U. Chi. L. Rev. 317, 327 (1978) (state policies may seek to limit preclusive effect of state court judgment). These concerns certainly are not made less compelling because state courts lack jurisdiction

over federal antitrust claims. We therefore reject a judicially created exception to § 1738 that effectively holds as a matter of federal law that a plaintiff can bring state law claims initially in state court only at the cost of forgoing subsequent federal antitrust claims. *Federated Department Stores, Inc.* v. *Moitie* does not suggest a contrary conclusion. That case did not involve § 1738; rather it held that "accepted principles of res judicata" determine the preclusive effect of a federal court judgment. See 452 U. S., at 401.

In this case the Court of Appeals should have first referred to Illinois law to determine the preclusive effect of the state judgment. Only if state law indicates that a particular claim or issue would be barred, is it necessary to determine if an exception to § 1738 should apply. Although for purposes of this case, we need not decide if such an exception exists for federal antitrust claims, we observe that the more general question is whether the concerns underlying a particular grant of exclusive jurisdiction justify a finding of an implied partial repeal of § 1738. Resolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. Our previous decisions indicate that the primary consideration must be the intent of Congress. See *Kremer, supra,* at 470–476 (finding no congressional intent to depart from § 1738 for purposes of Title VII); cf. *Brown* v. *Felsen,* 442 U. S. 127, 138 (1979) (finding congressional intent that state judgments would not have claim preclusive effect on dischargeability issue in bankruptcy).

### IV

The decisions below did not consider Illinois preclusion law in their discussion of the claim preclusion issue. The District Court relied on federal law to conclude that the state judgments did not bar the claims under the Sherman Act. See 496 F. Supp., at 238–239. Similarly, the plurality opinion of the Court of Appeals did not discuss Illinois principles of

claim preclusion. See 726 F. 2d, at 1154. Although an opinion concurring in part also concluded that petitioners' antitrust claim was barred as a matter of federal law, it did suggest that this conclusion was consistent with Illinois law. See *id.*, at 1164 (Flaum, J.). A dissenting opinion vigorously argued that principles of Illinois claim preclusion law did not require dismissal of the federal antitrust claims. See *id.*, at 1176–1177 (Cudahy, J.). Before this Court, the parties have continued to disagree about the content of Illinois preclusion law. We believe that this dispute is best resolved in the first instance by the District Court. Cf. *Migra* v. *Warren City School Dist. Bd. of Ed.*, 465 U. S., at 87.

Petitioners also urge us to reverse the decision of the Court of Appeals with respect to the contempt order. We specifically declined to grant certiorari on questions related to the discovery order or the subsequent contempt order, and we do not address those issues here.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN and JUSTICE STEVENS took no part in the consideration or decision of this case.

CHIEF JUSTICE BURGER, concurring in the judgment.

I agree with the Court's implicit conclusion that the Court of Appeals approached 28 U. S. C. § 1738 too narrowly and technically by holding it irrelevant on the ground that Illinois law does not address the preclusive effect of a state court judgment on a federal antitrust suit, see 726 F. 2d 1150, 1154 (1984). In the circumstances presented by this case, a fair reading of § 1738 requires federal courts to look first to general principles of state preclusion law. Those principles control if they clearly establish that the state court judgment does not bar the later federal action: Only recently, we re-

affirmed in *Migra* v. *Warren City School District Board of Education*, 465 U. S. 75 (1984), that a federal court is not free to accord greater preclusive effect to a state court judgment than the state courts themselves would give to it.

The Court now remands with directions for the District Court to consider Illinois claim preclusion law, but no guidance is given as to how the District Court should proceed if it finds state law silent or indeterminate on the claim preclusion question. The Court's refusal to acknowledge this potential problem appears to stem from a belief that the jurisdictional competency requirement of res judicata doctrine will dispose of most cases like this. See *ante*, at 382.

I cannot agree with the Court's interpretation of the jurisdictional competency requirement. If state law provides a cause of action that is virtually identical with a federal statutory cause of action, a plaintiff suing in state court is able to rely on the same theory of the case and obtain the same remedy as would be available in federal court, even when the plaintiff cannot expressly invoke the federal statute because it is within the exclusive jurisdiction of the federal courts. In this situation, the jurisdictional competency requirement is effectively satisfied. Therefore, the fact that state law recognizes the jurisdictional competency requirement does not necessarily imply that a state court judgment has no claim preclusive effect on a cause of action within exclusive federal jurisdiction.

The states that recognize the jurisdictional competency requirement do not all define it in the same terms. Illinois courts have expressed the doctrine in the following manner: "The principle [of res judicata] extends not only to questions which were actually litigated but also to all *questions* which *could have been raised* or determined." *Spiller* v. *Continental Tube Co.*, 95 Ill. 2d 423, 432, 447 N. E. 2d 834, 838 (1983) (emphasis added); see also, *e. g.*, *LaSalle National Bank* v. *County Board of School Trustees*, 61 Ill. 2d 524, 529, 337 N. E. 2d 19, 22 (1975); *People* v. *Kidd*, 398 Ill. 405, 408, 75 N. E. 2d 851, 853–854 (1947). In the present case, each

petitioner could have alleged a cause of action under the Illinois Antitrust Act, Ill. Rev. Stat., ch. 38, ¶ 60–1 *et seq.* (1981), in his prior state court lawsuit against respondent. The principles of Illinois res judicata doctrine appear to be indeterminate as to whether petitioners' ability to raise state antitrust claims in their prior state court suits should preclude their assertion of essentially the same claims in the present federal action.   This indeterminacy arises from the fact that the Illinois courts have not addressed whether the notion of "questions which could have been raised" should be applied narrowly[1] or broadly.[2]   No Illinois court has considered how the jurisdictional competency requirement should apply in the type of situation presented by this case, where the same theory of recovery may be asserted under different statutes.   Nor has any Illinois court considered whether res judicata precludes splitting a cause of action between a court of limited jurisdiction and one of general jurisdiction.[3]

---

[1] *E. g.*, by inquiring whether the plaintiff could have raised the question whether the defendant violated a particular statute.

[2] *E. g.*, by inquiring whether the plaintiff could have raised the question whether the defendant engaged in a group boycott.

[3] Compare Restatement (Second) of Judgments § 24, Comment *g*, Illustration 14, pp. 204–205 (1982):

"In an automobile collision, A is injured and his car damaged as a result of the negligence of B.   Instead of suing in a court of general jurisdiction of the state, A brings his action for the damage to his car in a justice's court, which has jurisdiction in actions for damage to property but has no jurisdiction in actions for injury to the person.   Judgment is rendered for A for the damage to the car.   A cannot thereafter maintain an action against B to recover for the injury to his person arising out of the same collision."

See also 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4412, p. 95 (1981), stating that the "general rule" in state courts is that "[a] second action will not be permitted on parts of a single claim that could have been asserted in a court of broader jurisdiction simply because the plaintiff went first to a court of limited jurisdiction in the same state that could not hear them."   The holding in *Lucas* v. *Le Compte*, 42 Ill. 303 (1866), is similar to this "general rule," but that holding was based on a construction of an Illinois statute, Ill. Rev. Stat., ch. 59, § 35 (1845), which (a) has been repealed, see Act of Apr. 15, 1965, 1965 Ill. Laws 331, and (b)

Hence it is likely that the principles of Illinois claim preclusion law do not speak to the preclusive effect that petitioners' state court judgments should have on the present action.   In this situation, it may be consistent with § 1738 for a federal court to formulate a federal rule to resolve the matter.   If state law is simply indeterminate, the concerns of comity and federalism underlying § 1738 do not come into play.   At the same time, the federal courts have direct interests in ensuring that their resources are used efficiently and not as a means of harassing defendants with repetitive lawsuits, as well as in ensuring that parties asserting federal rights have an adequate opportunity to litigate those rights.   Given the insubstantiality of the state interests and the weight of the federal interests, a strong argument could be made that a federal rule would be more appropriate than a creative interpretation of ambiguous state law.[4]   When state law is indeterminate or ambiguous, a clear federal rule would promote substantive interests as well: "Uncertainty intrinsically works to defeat the opportunities for repose and reliance sought by the rules of preclusion, and confounds the desire for efficiency by inviting repetitious litigation to test the preclusive effects of the first effort."   18 C. Wright, A. Miller, & E. Cooper, *supra* n. 3, § 4407, at 49.

A federal rule might be fashioned from the test, which this Court has applied in other contexts, that a party is precluded

---

had a broader preclusive effect than general Illinois res judicata doctrine has.   *Clancey* v. *McBride*, 338 Ill. 35, 169 N. E. 729 (1929), involved the same circumstances as the above-quoted illustration from the Restatement.   The court resolved the case, however, without reference to the limited jurisdiction of the justice's court, by concluding that injury to the person and injury to property are distinct legal wrongs that can be the subject of separate lawsuits.

[4] By contrast, when a federal court construes substantive rights and obligations under state law in the context of a diversity action, the federal interest is insignificant and the state's interest is much more direct than it is in the present situation, even if the relevant state law is ambiguous.

from asserting a claim that he had a "full and fair opportunity" to litigate in a prior action. See, *e. g., Kremer* v. *Chemical Construction Corp.*, 456 U. S. 461, 485 (1982); *Allen* v. *McCurry*, 449 U. S. 90, 95 (1980); *Montana* v. *United States*, 440 U. S. 147, 153 (1979); *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation*, 402 U. S. 313, 328 (1971). Thus, if a state statute is identical in all material respects with a federal statute within exclusive federal jurisdiction, a party's ability to assert a claim under the state statute in a prior state court action might be said to have provided, in effect, a "full and fair opportunity" to litigate his rights under the federal statute. Cf. *Derish* v. *San Mateo-Burlingame Board of Realtors*, 724 F. 2d 1347 (CA9 1983); *Nash County Board of Education* v. *Biltmore Co.*, 640 F. 2d 484 (CA4), cert. denied, 454 U. S. 878 (1981).

The Court will eventually have to face these questions; I would resolve them now.